IN RE ZONING VARIANCE OF GILLEN.

[Cite as In re Zoning Variance of Gillen, 21 Ohio Misc. 84.]

(No. 52591—Decided September 10, 1969.)

Common Pleas Court of Scioto County.

*Mr. Jack D. Young,* for appellants.

*Mr. Edward V. Leach, Jr.,* city solicitor, and *Mr. Richard L. Eisnaugle,* for Paul H. Adams.

MARSHALL, J.   This is an appeal from the action of the Zoning Board of Appeals of the city of Portsmouth, Ohio, in granting a variance at the request of Mr. Paul H. Adams to construct a dental office on a certain lot located on the corner of Kinneys Lane and Baird Avenue in the city of Portsmouth, such lot being in a residence A zone district. The appeal was instituted by Elizabeth A. Grassman and Marian Conner, residents of the area, and was submitted to the court on the transcript filed by the board and the evidence adduced at the hearing, pursuant to the provisions of Chapter 2506, Revised Code.   Unless the decision appealed from is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record" (Section 2506.04, Revised Code), it must be affirmed.

The record shows that by letter dated June 23, 1969, Paul H. Adams requested the Zoning Board of Appeals to allow a variance to construct a dental office on the lot in question. No evidence was introduced at the hearing that the requirements of Section 123.03 of the Administrative Code of the City of Portsmouth, relative to notice of the hearing before the board, was not complied with. It is not disputed that Mr. Adams did not file an application with the building officer for a permit to construct the proposed building, as required by Section 1131.02 (b), and that the request for a variance was made without a ruling of that officer refusing to issue a permit.   The transcript indicates that the board took the action appealed from at a meeting held on June 30, 1969, after having mailed 25 notices thereof dated June 23, 1969.   The appellants herein voiced their objections at that meeting.   The "variance" was granted, "after much discussion," unanimously.   The minutes reveal that Mr. Adams intended to erect the dental office building for Gregg Gillen, D.D.S., but there is nothing in the record in-

dicating that any question of hardship was considered by the board. Mr. Adams held an option to purchase the lot, and obtained title thereto on July 18, 1969.

Following is the relevant portion of the *Codified Ordinances of the City of Portsmouth, Ohio*:

"BOARD OF ZONING APPEALS.

"(a) *Establishment and Powers.* A Board of Zoning Appeal is hereby established to administer the details of the application of the regulations of this Zoning Code and to determine and vary their application in harmony with their general purpose and intent in accordance with the general provisions of this Zoning Code. The Board shall consist of three nonsalaried members appointed by the City Manager to serve for three years without compensation, except that the terms of the members first appointed shall be for one, two and three years respectively. Hearings of the Board shall be public, but any hearing on an appeal case shall be preceded by a notice published not less than six days in advance of such hearing, as provided in Section 123.03 of the Administrative Code.

"(b) *Appeals.* Appeals to the Board may be taken by any person or by any officer, board or commission of the Municipality affected by any grant or refusal of a building permit or by any other decisions of the Building Officer in regard to the requirements of this Zoning Code. Such appeals shall be filed within thirty days from such ruling upon an appropriate form furnished by the City for an appeal. The Board may, in accordance with the provisions of this Zoning Code, refuse or affirm, wholly or partly, the appeal.

"(c) *Variations on Lots.* The Board shall have the power to grant the projection of any building into a required yard to secure a building or structure practicable in its construction and arrangement or to grant other variations, in the following cases:

"(1) Upon an irregular shaped lot having the required area.

"(2) Upon a lot of exceptional topography.

"(3) Upon an exceptionally narrow, shallow or ir-

regular lot, existing and of record at the time of the passage of this Zoning Code (Ordinance 1946-47, passed August 7, 1946, as amended).

"(4) To establish or adjust a district line where it passes through a lot or where the lot layout actually differs from that shown or implied on the Zoning Map. (Ord. 1946-47. Passed 8-7-46.)

"(d) *Cases of Hardship.* Where the strict application of any provision of this Zoning Code would result in undue hardship upon the owner of a specific property, the Board shall have the power to modify or vary such strict application, provided that such modification or variation remains in harmony with the general purpose and intent of this Zoning Code, so that public health, safety, convenience, comfort, prosperity and general welfare will be conserved and substantial justice done. All persons making application for variances shall deposit with the Building Officer a fee of twenty dollars ($20.00) to cover the cost of mailing notices and other expenses involved in a hearing before the Board. (Ord. 1967-67. Passed 4-27-67.)"

The fact that Mr. Adams did not hold legal title to the premises at the time he requested the variance is immaterial.

Nothing can be found in the city charter or in the ordinances requiring that an appeal be taken from an action of the board to city council, and it is, therefore, concluded that this appeal was properly taken pursuant to Section 2506.01, Revised Code, the action of the board being considered a "final order, adjudication, or decision."

As a purely procedural matter, it is evident that the board was without authority to entertain the request for a variance, since there was no action by the building officer from which an appeal was made. The necessary steps prerequisite to invoking the appellate jurisdiction of the board as set forth by Section (b) of the ordinance were not taken. *Siegel* v. *Kohn* (1932, Court of Appeals), 11 Ohio Law Abs. 679; *Vandervort* v. *Sisters of Mercy* (1952, Court of Appeals), 97 Ohio App. 153; *Bloom* v. *Wides* (1955), 164 Ohio St. 138.

Despite the foregoing procedural defect, this court considers it necessary to comment upon a matter of greater significance posed by the appeal.

Except in the case of home occupation, the maintenance of a dental office is prohibited in Residence A Districts by Section 1133.02 of the Municipal Code.

The ordinance in question does not categorically delegate to the board the power to authorize a use different from that prescribed by the Zoning Code. It is ostensibly authorized to make exceptions to the requirements of the building code in certain specific instances which involve irregularly shaped lots, exceptional topography and similar enumerated situations, none of which appear to be applicable here. Then in Section (d) it is broadly given the power to modify or vary the strict application of any provision of the Zoning Code which would result in undue hardship upon the owner, "provided that such modification or variation remains in harmony with the general purpose and intent of this Zoning Code, so that public health, convenience, comfort, safety, prosperity and general welfare will be conserved and substantial justice done." Assuming, however, that the power to authorize a use variance is contained in the ordinance, in the case of *State, ex rel. Selected Properties, Inc.*, v. *Gottfried* (1955), 163 Ohio St. 469, the Supreme Court of Ohio held "If a zoning ordinance of a municipality does not contain sufficient criteria or standards to guide the administrative officer or tribunal in the exercise of the discretion vested in it, such enactment is unconstitutional and invalid." The Court of Appeals of Cuyahoga County was faced with a similar problem in the case of *In re Appeal of Clements* (decided May 20, 1965), 2 Ohio App. 2d 201. In that case, the ordinance first prohibited certain uses in certain zones, and then flatly delegated to the planning commission the power to grant a variance for the prohibited uses, without prescribing any grounds for the allowance of the same. The court stated (page 211), "It is basic in connection with zoning legislation that the grounds upon which variances are to be granted be specified in the ordinance. * * * 'The funda-

mental rule that ungoverned and unbridled discretion cannot be vested in either legislative or administrative bodies or officials, or in anyone, is applicable to variances; a uniform rule or standard to govern their grant or denial in all cases must be established by a zoning ordinance.' "

Since the ordinance in question fails to provide standards or criteria for the guidance of the board, at least as its actions would relate to the granting or denial of a use, and also for the protection of the citizens of Portsmouth, it does not measure up to the constitutional requirements. That this is the case is revealed by a cursory examination of the minutes of the same meeting at which subject variance was granted. At that meeting the board voted unanimously to grant a variance to one person for the purpose of converting a building to office use, to which request no one appeared to object; and to deny the request of another person to park a house trailer on his lot for the reason that he did not own the lot as was originally presumed, and because of the "opposition" thereto. It is, therefore, readily perceived that the board was not acting upon any uniform rule of action and that in so far as use variances are concerned, the ordinance leaves the power of determining the same entirely to the will of the members of the board, which is not an elective body. As was stated in *Selected Properties* v. *Gottfried, supra,* "It is established that any municipal ordinance which vests an arbitrary discretion in public administrative officials with reference to the rights, property or business of individuals, without prescribing a uniform rule of action, making the enjoyment of such rights depend upon arbitrary choice of the officers without reference to all persons of the class to which the ordinance is intended to be applicable, and without furnishing any definite standard for the control of the officers, is unconstitutional, void, and beyond the powers of a municipality."

Carrying this matter a step further, it is the conclusion of this court that the board was without authority to grant the use "variance" requested, because such action would in effect constitute an amendment to the use provisions of

the ordinance, which is a function exclusively of the city council. The Court of Appeals of Cuyahoga County in the case of *State, ex rel. Basista,* v. *Melcher* (1963), 118 Ohio App. 37, was confronted with a situation nearly identical to the one involved here. After a refusal by the Building Commissioner to issue a permit for the construction of a building containing a medical doctor's office in a district in which such was not a permitted use, the Board of Zoning Appeals granted a "variance" to the applicant. The court held that in the absence of a showing of unusual hardship caused by the use restrictions imposed by the ordinance, the board was without jurisdiction "to grant a variance which in truth would constitute an amendment to the use provisions of the ordinance—a power which is exclusively within the jurisdiction of the legislative body of the city." Whether or not the proposed location of a dental office would be desirable is not within the scope of this adjudication, this court being constrained to pass only upon the legality of the order appealed from. The order of the Zoning Board of Appeals is vacated.

An entry may be prepared accordingly, saving exceptions.