JOURNAL ENTRY and OPINION
Plaintiffs-appellants, George and Laura Faulkner, Charles K. and Mary Koster, and Nicholas and Dzwinka Holian appeal from the trial court's decision affirming the decisions made by the Board of Zoning Appeals (BZA) of defendant-appellee the City of Bay Village regarding property owned by defendants-appellees Richard and Debra Chelko. For the reasons below, we affirm the decision of the trial court in part, and reverse in part.
This appeal stems from the following set of facts. In 1997, the Chelkos purchased a lakefront lot located at 30498 Lake Road in Bay Village. The Chelkos' lot, which is not visible from Lake Road, is sandwiched between Lake Erie and the Faulkners' lot. The Faulkners' lot is a streetfront lot located at 30506 Lake Road. The Chelkos have access to Lake Road by an easement which runs across the Faulkners' property; likewise, the Faulkners have access to Lake Erie via an easement which runs across the Chelkos' property.
In 1999, the Chelkos created a preliminary construction plan whereby the beach house, approximately 1,400 square feet in size, currently existing at 30498 Lake Road, would be torn down and replaced with a permanent residence, approximately 3,000 square feet in size. In December 1999, the Chelkos applied for zoning variances because they believed that their property did not meet the minimum square footage required for the building or enlargement of a dwelling, and because their property lacked a front yard.
On July 27, 2000, the BZA concluded that the Chelkos were not required to obtain variances.
On August 16, 2000, pursuant to R.C. 2506, the Faulkners appealed the July 27, 2000 BZA decision to the Cuyahoga County Court of Common Pleas, Case No. 415237.
On September 15, 2000, the Chelkos applied for a building permit. Objections to the building permit were filed by the Faulkners, the Kosters, and the Holians. On November 30, 2000, at the BZA hearing, the appellants' objections were denied, and the BZA recommended that the building commissioner grant a building permit to the Chelkos after the building director determines that the proposed structure meets the City's requirements and after the City's consulting engineer approves the Chelko plans.
The Faulkners appealed the November 30 BZA decision to the Cuyahoga County Court of Common Pleas, Case No. 425178, and the Kosters and the Holians also appealed the November 30 decision in Case No. 426644. All three cases were consolidated by the trial court.
On February 9, 2001, the trial court held:
 "The Co-Appellants of Consolidated Case Nos. 415237, 425178 and 426644 appeal is not well taken.
 The administrative decision of a board of zoning was not illegal, arbitrary, capricious, unreasonable or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record.
Judgment of the Zoning Board is affirmed."
Appellants timely appealed the trial court's decision, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN DETERMINING THAT THE BAY VILLAGE BOARD OF ZONING APPEALS HAD JURISDICTION ON JULY 27 TO MAKE THE INITIAL DETERMINATION AS TO WHETHER OR NOT THE CHELKOS WERE REQUIRED TO OBTAIN THREE VARIANCES.
The powers and duties of the BZA are defined in section 1127.04(C) of the Bay Village Codified Ordinances (BVCO) as follows:
 The Board shall hear and decide appeals de novo and shall review on appeal any order, requirement, decision or determination of the Building Commissioner relating to the enforcement of this Zoning Code. It shall also hear and decide all matters properly referred to it, or upon which it is required to pass, under the provisions of these Codified Ordinances. Within its powers the Board may reverse or affirm wholly or in part, or modify, the order, requirement, decision or determination of the Building Commissioner appealed from, and shall make such order, requirement, decision or determination as in its opinion ought to be made under the circumstances and to that end shall have all the powers of the officer from whose decision the appeal is taken.
 PROCEDURAL HISTORY
In December 1999, the Chelkos initiated this action by appealing to the BZA for variances from the zoning code. The Chelkos stated in a May 30, 2000 letter to the law director that they appealed directly to the BZA "upon the cautionary guidance of Mr. Cleary, Director of Building," however, no decision from which to appeal was ever issued by Mr. Cleary. Thus, this action did not appear before the BZA as an appeal, but instead, the Chelkos directly sought variances from the BZA.
The Chelkos' neighbors were advised of their request for variances. In response, one neighbor sent a letter advising the City that it supported the proposed construction project, and the Kosters and the Faulkners wrote letters opposing the variance request.
On March 2, 2000, a hearing on the variance request was held. The Chelkos and the Faulkners presented evidence in support of their arguments. The decision on the variance was tabled to afford the City's law director the opportunity to issue a statement as to the BZA's responsibility to decide the request.
In response to this meeting, on May 15, 2000, the City's law director prepared a four-page memorandum setting forth the arguments presented, the decisions to be made, and the applicable legal authority. However, the memorandum did not specify the BZA's responsibility in making a decision on the variance request.
On May 30, 2000, the Chelkos responded to the law director's letter and stated that they no longer believed that variances were necessary. The Chelkos stated that they were interested in pursuing a building permit without variances and asked the law director to "further review our request for a building permit without additional required variances."
The Chelkos maintained that, upon further research, they believed that variances which "run with the land" were granted by the BZA in 1954. Thus, the issue became not whether the variances should be granted, but whether the variances were even required. Essentially, the Chelkos sought an advisory decision from the BZA on the necessity of the variances.
Thereafter, on June 15, 2000, another BZA meeting was held during which the history of the Chelko property was discussed, but no decision was made at that time.
On June 28, 2000, the law director issued a memorandum to clarify issues stemming from the June 15, 2000 meeting. The law director addressed the BZA's authority in the memorandum by stating:
 There seems to be some confusion as to the purpose of referring this matter to the Board of Zoning Appeals. In view of the uniqueness of this property, including lack of frontage on a dedicated road, coupled with objections that have been raised, it seemed prudent to have the history of the property reviewed by the BZA.
After the issuance of the June 28, 2000 memorandum, another meeting was held regarding the Chelko property. At the July 13, 2000 BZA meeting, the BZA made a number of factual findings. The BZA determined that: (1) the Chelko property did not encompass the minimum lot size of 14,700 square feet as is required by BVCO 1155.01; (2) the Chelko property did not abut a publicly dedicated street as required by BVCO 1111.05(b); and (3) the Chelko property did not meet the front yard requirement as set forth in BVCO 1121.20. As a result, it was concluded that the Chelkos would have to obtain variances.
Based on the BZA's findings at the July 13 hearing, the Chelkos filed an appeal requesting the three variances set forth above.
On July 27, 2000, another BZA hearing was held on the issues discussed at the July 13 hearing. At the July 27 hearing, the BZA decided that it would recognize and accept the historical status of the Chelko lot as to its failure to abut a dedicated street and its lack of front yard. Essentially determining that, although the property did not meet the requirements of the code as determined at the July 13 meeting, no variances were necessary because this lot has historically been treated as a buildable lot.
On the issue of the size of the lot, the BZA reconsidered its July 13 finding that the lot did not meet the requisite size and decided to accept the square footage as stated in the deed. Thus, the BZA accepted the legal description in the property deed for 30498 Lake Road, as shown on an engineering survey dated October 7, 1999, which shows 14,739 square feet, 739 feet more than is required by BVCO 1155.01.
JURISDICTIONAL ANALYSIS
As stated above, no decision had been made by the building commissioner prior to the Chelkos' appeal in December 1999. Therefore, the issue of the variances was immediately determined by the BZA, bypassing any decision by the building commissioner. Clearly, these issues were not before the BZA pursuant to the appeal requirement in BVCO 1127.04(D).
Another option under BVCO 1127.04(C) is that the BZA may "hear and decide all matters properly referred to it * * * under the provisions of [the Bay Village] Codified Ordinances."
The June 28, 2000 memorandum from the law director and the Chelkos' assertion that the building commissioner sent them to the BZA for determination of their request for variances serve as evidence that the law director and the building commissioner referred these issues to the BZA for determination.
Further, at the two July meetings, the building commissioner stated that he referred the issues raised by the Chelkos' variance request to the BZA for clarification.
Therefore, although no formal referral of the variance issues was made under a specific codified ordinance, we find the matter was referred to the BZA by the building commissioner as permitted by BVCO 1127.04(C).
Appellants argue that this court should find, as the municipal court found in In re Zoning Variance of Gillen (1969), 21 Ohio Misc. 84,255 N.E.2d 313, that the BZA's decision is invalid because of procedural flaws. However, unlike Gillen, the ordinance in question gives the BZA authority to hear matters other than appeals when properly referred to it. In further contrast to Gillen, the blatant failure to acknowledge the building commissioner's authority in Gillen is not present in this case. Rather, the Bay Village building commissioner was present at both the July 13 evidentiary meeting and the July 27 decisional meeting and specifically stated that he had referred the variance issues to the BZA for clarification. Further, all interested parties were notified of the hearings and, as the record reflects, all parties involved were given ample opportunity to be heard and to present evidence regarding the size of the Chelko lot.
Thus, we find that the procedural flaws noted above were harmless and the BZA's decision is not void for want of jurisdiction. Cf. Gillen,21 Ohio Misc. 84, 255 N.E.2d 313.
Therefore, the appellants' first assignment of error is without merit.
 II. THE TRIAL COURT ERRED BECAUSE, AS A MATTER OF LAW, THERE DOES NOT EXIST A PREPONDERANCE OF RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE THAT THE CHELKO LOT CONTAINS 14,700 SQUARE FEET.
 III. THE TRIAL COURT ERRED BECAUSE, AS A MATTER OF LAW, THERE DOES NOT EXIST A PREPONDERANCE OF RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE THAT THE CHELKO LOT DOES NOT NEED A VARIANCE.
At the July 13 meeting, the BZA determined that the Chelko property was not 14,700 square feet, which is the minimum lot size required for building or enlarging a dwelling. However, at the July 27 meeting, the BZA moved to reconsider its previous decision based on additional evidence and ultimately concluded that the lot exceeded the minimum size requirement.
At the July 13 meeting, the BZA also determined that the Chelko property lacked a front yard and did not abut a dedicated street as further required when building or enlarging a dwelling on a parcel of property. However, at the July 27 meeting, the BZA accepted the historical status of the Chelko property as to its lack of frontage on a dedicated street and lack of front yard. Based on these findings, the BZA determined that the Chelkos did not need to obtain variances in order to tear down the beach house and build a new larger home on their lot.
R.C. 2506.04 states that when reviewing an appeal from an order of administrative officers and agencies:
 The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.
The language of R.C. 2506.04 was construed by the Ohio Supreme Court in Henley v. Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142,147, as follows:
 [W]e have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. See Smith v. Granville Twp. Bd. of Trustees (1998), 81 Ohio St.3d 608, 612, 693 N.E.2d 219, 223, citing Dudukovich v. Lorain Metro. Hous. Auth. (1979), 58 Ohio St.2d 202, 206-207, 12 Ohio Op. 3d 198, 201-202, 389 N.E.2d 1113, 1116-1117.
 The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "more limited in scope." (Emphasis added.) Kisil v. Sandusky
(1984), 12 Ohio St.3d 30, 34, 12 Ohio B. Rep. 26, 30, 465 N.E.2d 848, 852. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. at fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Rd. (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267. (Emphasis added.)
 THE SIZE OF THE CHELKO LOT
Section 1155.01 of the Bay Village Codified Ordinances provides:
 "[N]o dwelling shall hereafter be constructed or enlarged upon a lot unless such lot contains in area not less than 14,700 square feet per family to be housed in such building."
The determination of the size of the Chelko lot is purely a factual issue. In the course of the evidentiary proceedings, four different measurements were presented as representing the size of the Chelko property.
The deed to the Chelko property states that the lot contains 14,739.36 square feet. The metes and bounds description of the property identifies the southerly shore of Lake Erie as a boundary of the property.
As stated in Ohio Attorney General Opinion No. 93-025, 1993 Ohio AG LEXIS 27:
 "Naturally, the shoreline of a body of water is in a constant state of change. Accordingly, it is impossible to fix a permanent property line for a littoral owner whose property is bound by the natural shoreline, except where the natural shoreline has been permanently altered by artificial means."
As the Opinion further states:
 "Because a body of water such as an ocean, sea or lake is not a stationary object, a deed that identifies an ocean, sea or lake as a boundary of a parcel of real property leaves room for questions as to the exact limits of the property." Id.
Further, as noted by the appellants, "[t]he determination of the natural shoreline of Lake Erie is a question of fact." Id.
At the July 13 hearing, two experts presented their opinions to the BZA regarding the size of the Chelko lot. A registered engineer and surveyor testified that the Chelko lot contains 14,739.36 square feet, and that approximately 990 feet was covered by water. An underwriter for Chicago Title entered a plat map which had been prepared by Campbell Associates which indicated that the Chelko property contains only 11,467 square feet.
After hearing this evidence, the BZA decided that the Chelko property did not meet the 14,700 square feet requirement.
However, the Chelkos were not represented by counsel at the July 13 hearing. As a result, the Chelkos and their counsel were given the opportunity to present additional evidence at the July 27 BZA meeting. The Chelkos presented a plat map, dated October 7, 1999, and revised on July 24, 2000, which was prepared by J.A.R. Engineering and Surveying, Inc., showing that the property contained 14,739 square feet.
The appellants also presented a plat map which was prepared by Campbell Associates on July 11, 2000 showing the lot contained 10,932 square feet, approximately 6,700 square feet less than the plat map previously prepared by Campbell Associates which was submitted at the July 13 hearing.
Before making its decision, the BZA specifically noted the discrepancies of sizes presented by the various experts during the evidentiary hearings. According to the expert witnesses, the lot size ranged from 10,932, 11,467, 13,800 to 14,739 square feet.
Ultimately, based on the inconsistency among the evidence submitted, the BZA decided to rely on the one figure which remained constant, and that was the figure in the deed to the property. In support of its position that the Chelko lot exceeded the 14,700 square feet requirement, was the subdivision map prepared by George Drake — the original owner of the land, the 1970 recorded deed for the Chelko lot, and the July 24, 2000 plat map prepared by J.A.R., all of which indicated that the property is 14,739 square feet in size.
We find that the BZA relied on credible evidence in making its decision that the lot exceeded the 14,700 square feet requirement. Furthermore, because this is an issue of fact, we must defer to the decision of the BZA and find that the trial court did not abuse its discretion in affirming the BZA's factual decision. Thus, appellants' second assignment of error is overruled.
 FRONTAGE ON A DEDICATED STREET AND FRONT YARD REQUIREMENT
The following Bay Village Codified Ordinances are at issue:
Section 1111.05(b), enacted on September 2, 1958, states:
 "All lots shall abut by their full frontage on a publicly dedicated street."
Section 1153.02, enacted on September 18, 1978, provides:
 "[E]very building, structure and use, * * * shall have a front yard."
The BZA determined that, although the Chelko property does not abut a publicly dedicated street or have a front yard, no variances were required based on the historical treatment of the Chelko lot. Therefore, it is necessary to review the historical treatment of this property.
In 1954, George Drake owned a large lakefront property, which he proposed dividing into five parcels. The Chelko property is the fifth parcel of the subdivision.
On June 3, 1954, the BZA approved the Drake subdivision. When the subdivision was originally approved, the BZA was well aware that lots four and five (the Chelko lot) would not abut a publicly dedicated street and would not have front yards; nonetheless, these parcels were approved. However, the approval of the subdivision was qualified. The BZA approved the subdivision with the condition that "at some future date" lots one and four be combined into a single lot, and lots two and five (the Faulkner and the Chelko lots, respectively) be combined into a single lot.
The lots were never combined and, on November 30, 1970, George Drake transferred lot number five (the Chelko lot) and lot number two (the Faulkner lot) to his son and daughter-in-law, Guthrey and Jean Drake. A separate deed was executed for lot five, and it was given its own permanent parcel number.
In 1973, the City granted a building permit to the Drakes for an addition to the house existing on the Chelko lot. No variances were required to obtain this permit.
In 1987, the Drakes sold lots two and five to the Gilsons. The parcels were then sold separately — lot two was sold to the Faulkners in 1991 and lot five was sold to the Chelkos in 1997.
In 1981, the issues regarding the lack of a front yard and failure to abut a publicly dedicated street were raised when Julia Rothfusz, the owner of the fourth Drake lot, attempted to build a larger home on her property. The Rothfusz lot is located directly to the west of the Chelko lot. It also does not abut a publicly dedicated street, nor does it have a front yard.
A BZA hearing was held regarding the matter because the building commissioner had refused to grant Rothfusz a building permit due to the lack of frontage. At the hearing, the BZA approved the building permit, without a variance, reasoning that the Rothfusz property was created as a separate parcel in 1954, and thus was in existence prior to the 1958 enactment of BVCO 1111.05(b) and the 1978 enactment of BVCO 1153.02.
Appellants argue that this decision differs from the Chelko situation and that, unlike the Rothfusz lot, the Chelko lot was not created before the enactment of BVCO 1111.05(b) because the actual lot split did not occur until the deed was issued in 1970. Appellants also argue that in 1954 the BZA did not consider lot five to be a separate buildable property because it stated that eventually it was to be combined with lot two.
However, it was clear from the plans submitted by George Drake in 1954 that he intended to make the Chelko lot a separate property. And as the BZA commented in 1981, "the Board of 1954 was satisfied with the dimensions submitted for subdivision and this Board is in no position to reverse this decision." Moreover, the 1981 BZA decision granting the Rothfusz permit ignored the fact that lots one and four were also to be combined. And the fact that lots two and five were to be combined was never raised when lot five was separately transferred in 1970.
The current BZA similarly felt that it was in no position to reverse the decision of the 1954 BZA. In addition, the lot has a permanent parcel number and it is taxed separately. Thus, it has been historically treated by the City as a separate, buildable lot.
Therefore, the evidence presented supports the BZA's decision to adopt the historical treatment of the Chelko lot and not require the Chelkos to obtain variances to build on their property.
Accordingly, we find that appellants' third assignment of error is without merit.
 IV. THE TRIAL COURT ERRED BECAUSE, AS A MATTER OF LAW, THE BOARD EXCEEDED ITS JURISDICTION IN ITS NOVEMBER 30 DECISION.
Section 1303.06 of the Bay Village Codified Ordinances provides in pertinent part that:
 If one or more complaints in writing are filed with the Building Commissioner * * * the application for a building permit and complaint shall be referred to the Board of Zoning Appeals * * * for determination by the Board as to whether the proposed construction, alteration, addition, conversion or repair will, if completed be so located on the land or be of such a character that it will substantially injure the appropriate or existing use or value of the neighboring property, which determination shall be made by a majority of the Board present at any meeting at which a quorum is present and whose determination shall be final. (Emphasis added.)
On September 15, 2000, the Chelkos filed an application for a building permit. Timely objections to the application were filed by the appellants and hearings were held on November 2 and November 30, 2000. At the November 30 hearing, the BZA denied the appellants' objections and recommended that the building director issue a permit for the proposed structure at 30498 Lake Road after the building director determines that the proposed structure meets the City's requirements and approves the Chelko plans.
Appellants argue that the BZA acted beyond the scope of its authority by making the above determination. However, by denying the appellants' objections, as noted by the BZA in the transcript of the hearing, it implicitly determined that the proposed construction will not "substantially injure the appropriate or existing use or value of the neighboring property." This is a decision which it was authorized to make under BVCO 1303.06. The additional language of the BZA decision regarding the request to the building commissioner to issue a permit, is merely a recitation of the language found in BVCO 1303.04, which sets forth the required findings that the building commissioner must make prior to issuing a building permit. Thus, we overrule the appellants' fourth assignment of error because the BZA had jurisdiction to make the November 30 decision.
 V. THE TRIAL COURT ERRED BECAUSE, AS A MATTER OF LAW, THERE DOES NOT EXIST A PREPONDERANCE OF RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE TO SUPPORT THE BOARD'S DENIAL OF THE APPELLANT'S OBJECTIONS TO THE CHELKOS' APPLICATION FOR A BUILDING PERMIT.
Appellants argue that the trial court erred in affirming the BZA determination that the proposed Chelko construction will not "substantially injure the appropriate or existing use or value of the neighboring property."
The Chelko property abuts a slope, a portion of which is owned by the Faulkners. At issue is whether the slope is stable enough to withstand the proposed construction.
The Chelkos' expert opined that, if certain precautions are taken, failure of the slope can be avoided. The Faulkners' expert determined that failure of the slope is almost certain. Given our limited scope of review, when there is a factual dispute, we must defer to the BZA's decision regarding that dispute.
However, appellants argue that the Chelkos submitted insufficient plans to the BZA, and as such, it was not possible for the experts to make a determination regarding whether the neighboring properties would be harmed.
Thus, the issue is not a factual dispute over which expert's opinion is more credible; the issue is whether enough information was given to the experts, and ultimately the BZA, to allow them to make a final determination regarding potential injury to neighboring properties.
BVCO 1303.02 governs applications for building permits. It requires that, in addition to the application, the applicant must provide a plat drawing of the lot, the size and location of each proposed structure, "and such plans drawn to scale, specifications and other information as may be necessary to enable the Building Commissioner to determine that the proposed building and use of the land will conform to the provisions of this Building Code and the Zoning Code."
BVCO 1303.04 sets forth the conditions for the issuance of a building permit and states, in pertinent part:
 (1) * * * The Building Commissioner is hereby authorized and directed to require the filing of such plans, specifications, details and other data in support of such application as he or the Board of Zoning Appeals may deem necessary to determine compliance with the terms of this subsection. (Emphasis added.)
Pursuant to BVCO 1303.04(4), the BZA's role at the November 30 hearing was to determine:
 "that said building or structure to be constructed, altered, added to, converted or repaired will, upon completion of the work proposed, be so located on the land and of such character that it will not substantially injure the appropriate or existing use or the value of the neighboring property." (Emphasis added.)
The Chelkos do not dispute that the plans before the BZA at the November 30 hearing lacked precise details for securing the slope which abuts the Chelko property and is partly owned by the Faulkners. The Chelkos state in their brief that the final details regarding securing the slope will be incorporated into the building plans once the building permit is granted.
The expert report prepared by URS that was submitted on behalf of the Chelkos also notes that the plans were not complete when the report was prepared. It states in pertinent part that:
 "[T]he purpose of the geotechnical investigation was to collect subsurface data to allow geotechnical recommendations to be made regarding the design and construction of the proposed residence."
* * *
 "This report has been prepared to aid in the evaluation of this property and to help the architect and engineer design this project."
* * *
 "[W]e would welcome the opportunity to review plans and specifications when they have been prepared so we can comment on how the soil conditions may affect them."
Throughout its report, URS also notes construction activities which "could result in instability of the slope." Several recommendations are made by URS to prevent the failure of the slope, including the use of temporary supports during construction, foundation requirements, types of excavation, basement and retaining walls specifications, and the use of drainage pipes to prevent erosion. The report was prepared approximately one month prior to the BZA's November 30 hearing. No other plans were submitted by the Chelkos to the BZA.
As noted in the expert report submitted on behalf of the appellants:
 "The plans submitted with the building permit [application] do not demonstrate or account for the serious issues and recommendations made by URS in its report * * *."
Pursuant to BVCO 1303.06, the BZA determination as to whether the proposed construction will substantially injure the neighboring property is final. Clearly, whether the slope will be stable during the construction process is an important issue when determining whether neighboring properties will be injured. Without pertinent information regarding how the stability of the slope will be addressed, the BZA cannot make a final determination regarding the potential for injury to neighboring property.
We recognize that BVCO 1303.02 and 1303.04(1) give discretion to the building commissioner or the BZA as to what information or details are necessary to determine if the proposed building and use of the land will conform to the provisions of the building code and the zoning code. However, the testimony of the experts for all the parties support a finding that the information regarding the reinforcement of the slope is vital to the question of whether neighboring properties will be injured by the proposed construction.
Thus, the BZA erred in making its determination that neighboring properties will not be injured, without having complete details regarding the proposed slope reinforcement. Clearly, this issue is material to the objections raised by the appellants. Therefore, the BZA could not properly deny the objection without having all of the facts before it on this issue. Accordingly, we find that the trial court abused its discretion in affirming the November 30 decision of the BZA which was not supported by the preponderance of substantial, reliable, and probative evidence.
We find merit in appellants' fifth assignment of error and remand this matter to the trial court for further proceedings consistent with the court's authority under R.C. 2506.04.
Judgment affirmed in part and reversed in part.
It is ordered that appellees and appellants share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J. CONCURS; MICHAEL J. CORRIGAN, P.J. DISSENTS WITH SEPARATE DISSENTING OPINION.